The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

SARAH PITERA,

  Plaintiff,

  vs.

ASSET RECOVERY GROUP, INC.,

  Defendant.

NO.  2:22−cv−00255-TL

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:

April 1, 2022

## I.      <u>INTRODUCTION</u>

In 2012, Asset Recovery Group, Inc. ("ARG"), Defendant herein, violated several debt-collection statutes[1] when it secretly obtained a default judgment against Plaintiff Sarah Pitera.  For her part, Ms. Pitera could not possibly have known of something ARG did behind her back.  ARG ceased all contact with Ms. Pitera until 2022, at which point Ms. Pitera learned of the ill-gotten default judgment.  This is the quintessential scenario for the application of equitable tolling, which Judge Martinez invoked in a recent case with nearly identical facts, and which was affirmed by the Ninth Circuit.

[1] In particular, the Fair Debt Collection Practices Act ("FDCPA") and Washington Collection Agency Act ("WCAA") (as enforced via the Consumer Protection Act ("CPA")).

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1    Defendant ARG's motion to dismiss is a bit confusing, as it seeks to blend certain legal

2    standards and ignore others altogether.  Out of an abundance of caution, Plaintiff is required to

3    address the misconceptions therein, and thus apologizes for the length of what should otherwise

4    be a very short brief.

5                                          **ARG's Argument**

6    ARG's motion is centered on its statute of limitations defense, which Plaintiff's Complaint

7    already anticipated and addressed.  As presented, ARG's argument is basically that the default

8    judgment was a matter of public record, and thus Ms. Pitera somehow should have known about

9    it.  This seemingly straightforward argument misstates the law.  To be clear, ARG only has one

10   argument.

11   ARG argues that individuals are, as a matter of law, "on notice" of everything in the "public

12   record."  This is true in matters of real estate transactions, where the term "public record" is used

13   by Washington courts to describe documents filed with county auditors' offices.  The cases cited

14   by ARG, indeed, discuss "notice" with respect to real property transactions.  The more general use

15   of the term "public record" includes anything which is not private – court proceedings, newspaper

16   articles, and health inspectors' reports on restaurants.  Washington law most certainly does not

17   state that every resident of this state is "on notice" of every written document regardless of time,

18   place, or location.  That is why lawyers are required to serve opposing parties with motions –

19   otherwise, they would simply be "on notice" by virtue of its filing.  That is obviously not the law.

20   From this false premise, ARG offers the false conclusion that Ms. Pitera's claims

21   automatically fail, because ARG's unlawfully-obtained judgment was "in the public record."

22   ARG remarkably argues that it is absolved of its wrongdoing…by virtue of its wrongdoing.  This

23

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 2
2:22-CV-00255-TL

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

argument is inequitable and unfair on its face, undermines fundamental due process, and should be disregarded in its entirety.

### Plaintiff's Claims Are Timely

Ms. Pitera's Complaint specifically invokes equitable doctrines, which include equitable tolling and equitable estoppel.  Ms. Pitera could not have known about an action taken behind her back, and maybe more importantly, had *no reason to know* that anything had occurred behind her back, because there was a legal requirement that ARG serve her with any motions.

Indeed, the Ninth Circuit recently addressed a case with nearly identical facts (a debt collector secretly obtaining a default judgment and taking no action for many years), and affirmed Judge Martinez' ruling that equitable tolling applied.  *Weinstein v. Mandarich Law Grp., LLP*, 798 Fed. Appx. 88, 90 (9th Cir. 2019).  The same result should occur here.

### Ms. Pitera Acted Reasonably

As equitable tolling is an (obviously) equitable doctrine, a party invoking it must have acted reasonably.  Ms. Pitera did this, as she reasonably relied on (1) *the law* (that she be served with any motion for default) and (2) ARG's written assertion that it would proceed "as provided by law."

ARG repeatedly suggests that Ms. Pitera needed only examine the court file to discover its unlawfully-obtained judgment, but this victim-blaming is not only inappropriate, but is entirely *unreasonable* – for the same reason that a person does not wake up every hour at night to confirm that their house is not on fire, no reasonable person would check a court file "just in case" a debt collector chose to break the law.  (Notably, ARG has not argued that Ms. Pitera somehow should have known that it was likely to break the law and violate court rules.)

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

That Ms. Pitera acted reasonably is underscored by the statutes enacted to protect people in her shoes.  The FDCPA is a remedial statute designed to protect consumers and address unlawful conduct by debt collectors.  *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014).  Whether a violation occurred is examined from the standpoint of a hypothetical "least sophisticated consumer."  *Id*. at 1118.  The question, thus, is whether Ms. Pitera acted reasonably in relying on ARG to follow the law and court rules.  She believes that answer is "yes."

### Summary

Plaintiff Sarah Pitera is entitled to rely on the doctrines of equitable tolling and equitable estoppel under the circumstances pleaded in her Complaint.  The Ninth Circuit has affirmed the application of equitable tolling under nearly identical circumstances, and that should apply here as well.

ARG's arguments about the "public record" are not applicable to the issues before the Court, as such Washington precedent concerns participants to a real estate transaction (in other words, when a party has an incentive to look for blemishes to title, and in a specific location (the auditor's records)).  As this motion concerns whether Plaintiff's claims are barred on their face, the answer is "no," as equitable doctrines apply and the applicable facts were specifically pleaded in the Complaint.  ARG's motion must be denied.

### II.    FACTS

Under Fed. R. Civ. P. 12(b)(6), the allegations in Plaintiff's Complaint are taken as true for purposes of Defendant's motion.  A short summary follows.

The collection lawsuit and the parties' exchange of written correspondence: In January 2012, ARG (Defendant herein) served Sarah Pitera (Plaintiff herein) with a lawsuit concerning a medical debt *which she had already paid*.  Complaint at ¶¶ 4-5 (dkt. #1-1).  Ms. Pitera immediately

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 4
2:22-CV-00255-TL

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

sent a letter to ARG asking for proof of the amounts owed.  *Id*. at ¶ 6, Ex. A.  ARG responded with its own letter, although it did not contain much information.  *Id*. at ¶ 7, Ex. B.  Ms. Pitera again sent ARG a letter asking for proof of what was supposedly owed.  *Id*. at ¶ 8, Ex. C.

On February 27, 2012, ARG and its counsel sent another letter – confirming receipt of both of Ms. Pitera's communications – which included no additional information beyond the name of the original creditor.  Complaint at ¶ 9, Ex. D.  The letter concluded: "If you are interested in resolving this matter, please contact my legal assistant [] by March 12, 2012.  Otherwise we intend to proceed *as provided by law*."  *Id*. (emphasis added).

ARG covertly obtains a default judgment: Despite ARG's promise to "proceed as provided by law," ARG did not do so, and – on the same day it sent the aforementioned letter – ARG moved for a default judgment.  Complaint at ¶ 11.  Such an action was not permitted by law.  *Id*. Ultimately, ARG obtained a default judgment without providing any notice to Ms. Pitera.  *Id*. at ¶ 12, Ex. E.    Notably, in obtaining the default judgment, ARG falsely stated, under penalty of perjury, that Ms. Pitera had "not appeared" in the lawsuit.  *Id.*

ARG sits on its ill-gotten default judgment: For whatever reason, ARG chose not to enforce its judgment for many years. Ms. Pitera, who is not a lawyer, justifiably assumed that ARG had investigated the matter and realized that the bill had already been paid.  Complaint at ¶ 14.

Ms. Pitera first learns of the judgment when ARG sought a renewal of judgment: In February 2022, Ms. Pitera received ARG's motion to renew the judgment, which was the first time that she had heard that a judgment had been entered.  Complaint at ¶¶ 15.  Ms. Pitera began to worry about the ramifications of the judgment and sought legal counsel to determine her rights and responsibilities in this situation.  *Id*. at ¶¶ 16-17.

1

### III.      LAW AND ARGUMENT

2

#### A.   Fed. R. Civ. P. 12(b)(6) Motions to Dismiss

3        Historically, Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state

4   a claim are "viewed with disfavor" and are "rarely granted." *Gilligan v. Jamco Develop. Corp.*,

5   108 F.3d 246, 249 (9th Cir. 1997).  "When a federal court reviews the sufficiency of a complaint,

6   before the reception of any evidence either by affidavit or admissions, its task is necessarily a

7   limited one.  This issue is not whether a plaintiff will ultimately prevail but whether the claimant

8   is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974).

9   On this backdrop, the *Iqbal/Twombly* decisions provide additional clarification but do not impose

10  any heightened pleading standards.  *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v.*

11  *Iqbal*, 556 U.S. 662 (2009).

12       When considering a Rule 12(b)(6) motion, "a judge must accept as true all of the factual

13  allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see Iqbal*,

14  556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their

15  veracity").  After accepting as true a plaintiff's allegations and drawing all reasonable inferences

16  in its favor, a court must then determine whether the complaint alleges a plausible claim for relief.

17  *See Iqbal*, 556 U.S. at 679; *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038,

18  1043 n. 2 (9th Cir. 2008) (court must also draw all reasonable inferences in favor of the plaintiff).

19        *1.   Plausible Complaints Survive Rule 12(b)(6) Motions to Dismiss*

20       The Ninth Circuit has explained the "plausibility" requirement as follows:

21       If there are two alternative explanations, one advanced by defendant and the other
         advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a
22       motion to dismiss under Rule 12(b)(6) … The standard at this stage of the litigation
         is not that plaintiff's explanation must be true or even probable. The factual
23       allegations of the complaint need only 'plausibly suggest an entitlement to relief.'

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 6
2:22-CV-00255-TL

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1    *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S.

2    662 (2009)).  Stated more succinctly, "*Iqbal* demands more of plaintiffs than bare notice pleading,

3    but it does not require us to flyspeck complaints looking for any gap in the facts."  *Lacey v.*

4    *Maricopa County (Arpaio)*, 693 F.3d 896, 924 (9th Cir. 2012) (en banc) (citations omitted).

5                    ***2.   Motions to Dismiss and Equitable Tolling***

6            Where a plaintiff's claim is subject to equitable tolling, "[a] motion to dismiss based on the

7    running of the statute of limitations period may be granted only if the assertions of the complaint,

8    read with the required liberality, would not permit the plaintiff to prove the statute was tolled."

9    *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995).

10   **B.   ARG's Actions in 2012 Violated State and Federal Law**

11           As a first threshold matter: Obtaining a default judgment, without notice, against a party

12   who has contacted the plaintiff is contrary to Washington's court rules and violates the FDCPA.

13           The instant motion is largely based on ARG's arguments concerning the statute of

14   limitations, although it does obliquely take issue with whether a violation of the FDCPA occurred.

15   Dkt. #5 at 11.  Thus, out of an abundance of caution, Plaintiff will briefly address this.

16           Setting aside the issue of limitations for a moment, ARG's conduct in 2012 unquestionably

17   violated the law.  Under Washington law, CRLJ 55[2] requires that a plaintiff provide written notice

18   of a motion for default judgment to *any* party who has appeared for *any* purpose.  CRLJ 55(a)(3).

19   Even a single telephone call constitutes an "appearance" under the liberally-interpreted standards,

20   and, therefore, seeking and obtaining a default judgment in violation of this rule violates the

21   FDCPA.  *See Sims v. Midland Funding LLC*, WL 1546135 (W.D. Wash. Apr. 20, 2021); *Weinstein*

22

23

---

[2] The relevant provisions are identical to those contained in the analogous Superior Court rule, CR 55.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 7
2:22-CV-00255-TL

1    *v. Mandarich Law Grp., LLP*, 2018 WL 6199249 (W.D. Wash. Nov. 28, 2018), *aff'd*, 798 Fed.

2    Appx. 88 (9th Cir. 2019).

3    As Ms. Pitera had exchanged numerous letters with ARG after she was served, ARG's

4    acquisition of the default judgment violated 15 U.S.C. §§ 1692e and 1692f. *Id*.

5    **C.   "Public Record" in the Context of the Cited Cases Means "Recorded Conveyances of**

6    **Real Estate" in County Auditors' Offices**

7    As a second threshold issue: ARG's arguments concerning its judgment being "public

8    record" are misleading and inapplicable to this case.   ARG's argument is essentially that its

9    judgment was "public record" and therefore everyone was on notice of its contents, but this is not

10   the law outside of a real estate context.

11   The "public record" discussed in Washington cases refers to publicly recorded real estate

12   conveyance documents pursuant to the recording statute, RCW Chapter 65.08.   As discussed

13   below, nearly all of ARG's argument derives from an out-of-context block quotation from *Shepard*

14   *v. Holmes*, 185 Wn. App. 730, 739 (2014), a case about a real estate purchase contract.   The two

15   cases cited in *Shepard* (on the issue of the discovery rule for fraud claims) both also concerned

16   real estate transactions.   The court correctly cited the recording statute, RCW 65.08.070, for its

17   intended purpose, which is that recorded documents concerning real estate conveyances serve to

18   place the public on notice of the contents of those documents.   *Id*. at 741.   Thus, where a real estate

19   transaction is concerned, the entire purpose of the recording statute is to place others on notice of

20   matters concerning real estate conveyances.   That is not this case.

21   ARG's sweeping arguments concerning its ill-gotten judgment being "public record" are

22   misleading.   A purchaser of real estate is deemed to be on inquiry notice of "public record"

23   documents, i.e., documents affecting land conveyances.   A defendant in a debt collection lawsuit

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 8
2:22-CV-00255-TL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1    is not deemed to have actual knowledge of every document meeting the criteria of being "public"

2    (such as every newspaper article, court filing, and local land-use permit applications), because that

3    is not how that works.

4    Again, the "public record" being discussed in cases like Shepard refers to documents

5    recorded with the auditor's office under RCW Chapter 65.08, in other words, conveyances of real

6    estate.  There is a particular contemplated audience for such notices, which is anyone buying or

7    selling real estate.  While the colloquial use of the term "public record" includes *anything* available

8    to the public, such as yard-sale announcements and local news broadcasts, this type of all-

9    encompassing "public record" is not what was discussed in *Shepard*.

10   What ARG is attempting to invoke is the "inquiry rule," which is that a purchaser of real

11   estate is imputed to have "notice of all facts which reasonable inquiry would disclose," which is

12   possible because of the mechanics of the recording statutes for land conveyances.  *Diaz v. N. Star*

13   *Tr., LLC*, 16 Wn. App. 2d 341, 356, *review denied*, 198 Wn.2d 1002 (2021); *see also Olson v.*

14   *Trippel*, 77 Wn. App. 545, 551 (1995) ("The burden of showing a duty of inquiry rests on the one

15   asserting it").

16   To be clear, *Shepard* does not stand for the proposition that a defendant to a debt-collection

17   lawsuit is "on notice" of actions taken by the debt collector behind the defendant's back, and

18   "public record" refers to those documents recorded with the county auditor's office in connection

19   with real estate conveyances.  The actual contours of the discovery rule (with respect to state-law

20   claims) and other equitable doctrines are discussed below.

21   **D.  Ms. Pitera Could Not Have *Reasonably* Known of the Covert Default Judgment**

22   As this fact touches on the remaining issues concerning limitations, Plaintiff would like to

23   underscore that Ms. Pitera simply could not have known of the default judgment.

Ms. Pitera was engaged in written discussions with ARG after she was served with the collection lawsuit.  As discussed above, CRLJ 55 mandates that under these circumstances, Ms. Pitera was absolutely entitled to notice of any motion for default, and ARG failed to comply with this requirement.   Ms. Pitera is entitled to rely on this rule.   *Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*, 197 Wn. App. 875, 893 (2017) ("Washington law generally presumes that people know the applicable laws").

Not only did Ms. Pitera not know about ARG's covert default judgment, but Ms. Pitera *had no reason to know* of the judgment, since there was a legal requirement that she be notified before any further steps were taken in the collection lawsuit.  For this reason, it is absurd to argue that "there was a case number and she could have looked at the court file."  Given that the law is that a person must receive notice of any filings, ***there is no reason to monitor the file for subsequent filings made contrary to law***.  Such reasoning would eviscerate the purpose behind every equitable doctrine and discovery rule – it would require patients who received surgery to get a full diagnostic examination "just in case" the surgeon left a scalpel in their abdomen.

It cannot be said that Ms. Pitera was on any type of notice of actions taken behind her back and against the law.  The entire purpose of CRLJ 55 is so that people *do* receive notice of filings. The implicit argument made by ARG is that (1) the very action which violated the law (seeking a judgment without giving notice) is also (2) the action which immunizes ARG from any claims (as a judgment is "public" and thus "should have been known").[3]

Here, it was ARG's legal responsibility and obligation to follow court rules.  It is not Ms. Pitera's responsibility to check the court file "just in case" ARG decided to break the law.  An

---

[3] Though the distinction might appear academic, Plaintiff's claims arise from ARG's conduct (disregarding the rules and seeking a judgment), not the content of the judgment itself.

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1    important premise of a functioning legal system is that parties before a court should be safe to

2    assume that the tribunal's rules will be followed.  For ARG to argue that Ms. Pitera (1) could not

3    rely on the law, (2) could not rely on ARG's compliance with the law, and (3) should have checked

4    the court file (despite having no reason to do so) is inappropriate.

5    **E.   <u>FDCPA Claims Are Subject to Equitable Tolling and Equitable Estoppel</u>**

6    Defendant ARG argues that the FDCPA's one-year statute of limitations bars all claims,

7    because the actions in connection with the improper default judgment were taken in 2012.  Dkt.

8    #5 at 3.  ARG then offers the conclusory and incorrect assertion that Plaintiff has not pleaded any

9    equitable doctrine which would make the claims timely.  *Id.* at 6.  ARG ultimately asserts that

10   somehow its unlawful conduct (obtaining the judgment) *is the same conduct which insulates it*

11   *from liability* (in that by concealing its actions, Ms. Pitera did not know they occurred).  *Id.*  The

12   crux of this argument is simply that the default judgment was ostensibly a "public record," but this

13   applies to real estate conveyances, not to statutory violations of debt collection laws.  Contrary to

14   ARG's assertions, there is no "public record" exception to equitable doctrines under these

15   circumstances.

16   Plaintiff's Complaint specifically anticipated this argument, and recited the rule that

17   "absent the application of an equitable doctrine," the "discovery rule" does not apply to FDCPA

18   claims.  Dkt. #1-1 at 4-5 (citing *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019)).  As equitable

19   doctrines do apply, Plaintiff pleaded facts in support of this.  *Id.*

20   The Supreme Court identified several equitable doctrines which toll the statute of

21   limitations, including the "fraud-specific discovery rule" and equitable tolling, but specifically

22   abstained from deciding the case on that basis. *Rotkiske*, 140 S. Ct. at 361.  Of course, "the doctrine

23

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 11
2:22-CV-00255-TL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1    of equitable tolling is 'read into every federal statute of limitation.'" *In re Milby*, 875 F.3d 1229,

2    1232 (9th Cir. 2017) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).

3        ### 1. *Equitable Tolling – Legal Standard*

4        Equitable tolling "applies in situations where, despite all due diligence, [the party invoking

5    equitable tolling] is unable to obtain vital information bearing on the existence of the claim, or

6    where the party invoking the doctrine has been induced or tricked by his adversary's misconduct

7    into allowing the filing deadline to pass." *Hensley v. United States*, 531 F.3d 1052, 1057–58 (9th

8    Cir. 2008) (internal citations and quotations omitted).  Conversely, the doctrine is not available

9    (A) "to avoid the consequences of one's own negligence" or (B) when a party fails "to exercise

10   due diligence in preserving his legal rights." *Id*.

11       Equitable tolling "has been consistently applied to excuse a claimant's failure to comply

12   with the time limitations where she had neither actual nor constructive notice of the filing period.

13   It focuses on whether there was excusable delay by the plaintiff: If a reasonable plaintiff would

14   not have known of the existence of a possible claim within the limitations period, then equitable

15   tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather

16   what information he needs." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (citation

17   omitted).

18       The purpose behind a doctrine such as equitable tolling is to correct what would otherwise

19   be an injustice, but there is no one-size-fits-all rule for this, as "[e]quity exists to address specific

20   circumstances and not to create blanket, prospective rules or applications.  *Smith v. Davis*, 953

21   F.3d 582, 590 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 878 (2020).  "Because equity requires a

22   court to deal with the case before it, complete with its unique circumstances and characteristics,

23   courts must take a flexible approach in applying equitable principles." *Id*.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 12
2:22-CV-00255-TL

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

Much of equitable tolling jurisprudence arises from habeas petition cases, where the doctrine is explained as follows: "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Davis*, 953 F.3d at 590. (citation omitted). "[T]he rule remains that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Id*. (citation omitted). "In determining whether reasonable diligence was exercised courts shall consider the [habeas] petitioner's overall level of care and caution in light of his or her particular circumstances." *Id*.

As a part of the "diligence" inquiry, courts now look to diligence *after* the extraordinary circumstance is removed (i.e., how quickly someone acted to pursue their rights). *Id*. at 599-600. In evaluating whether an "extraordinary circumstance stood in [a petitioner's] way and prevented timely filing," a court is not bound by "mechanical rules" and must decide the issue based on all the circumstances of the case before it. *Id*. at 600.

## 2. *Equitable Tolling – Fraudulent Concealment – Legal Standard*

A sub-type of equitable tolling is one for fraudulent concealment. This type of equitable tolling provides that "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered." *F.E.C. v. Williams*, 104 F.3d 237, 240-41 (9th Cir. 1996) (citation omitted). Under this variety, a plaintiff must establish "fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts." *Id*.

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

3. *Equitable Estoppel – Legal Standard*

While equitable tolling focuses on the actions of a plaintiff, equitable estoppel focuses on the actions of the defendant, and may be raised to estop a defendant from asserting a statute of limitations defense. *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998). Equitable estoppel requires consideration of a non-exhaustive list of factors, including:

> (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied.

*Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (citation omitted).

F. **Plaintiff's FDCPA Claims Are Timely**

The issue before the Court is whether Plaintiff has alleged sufficient facts upon which she may maintain a viable claim, not whether she ultimately prevails. Defendant ARG's motion offers an incredibly narrow and conclusory argument that Plaintiff cannot plead an applicable equitable doctrine, specifically because of ARG's assertion that the judgment was "public record." Dkt. #5 at 5-6.

As discussed above, ARG entirely misunderstands Washington law on the extent of "notice" provided by a "public record." In brief: For matters of real estate transactions, Washington's recording statute exists for the purpose of providing notice to the public of land conveyances. Thus, "notice" of the contents of publicly-filed real estate conveyances is imputed to any person engaging in a real estate transaction. ARG then springboards to the conclusion that its acquisition of a covert default judgment is the act which also exonerates ARG. In other words, because Ms. Pitera did not catch ARG quickly enough, ARG successfully gamed the system. This is not the law.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 14
2:22-CV-00255-TL

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

Equitable doctrines exist for situations just like Ms. Pitera's. The FDCPA prohibits debt collectors from using unfair, deceptive, or unconscionable means to collect debts, and the Ninth Circuit has already determined that conduct identical to ARG's (obtaining a default without providing requisite notice) violates these statutory prohibitions. What ARG appears unwilling to accept is that its wrongful conduct was failing to provide notice to Ms. Pitera, which is the exact reason why she did not know that it occurred until ARG resumed communications with her. ARG cannot rely on the cloud of ignorance which it created to evade liability.

ARG offers the superficially-seductive argument that Ms. Pitera "could have simply looked at the court file" and known of ARG's wrongful conduct.[4] First, this is a bit of a hindsight fallacy; if only everyone knew how the future would unfold, then yes, of course Ms. Pitera "could have simply looked at the court file." This ignores reality, of course, as Ms. Pitera had no reason to look at the court file; the law required ARG to notify Ms. Pitera if it were to file a motion (for default or anything else). In any event, the applicable doctrines are as follows:

### 1. *Plaintiff has properly pleaded an entitlement to equitable tolling*

Again, the question here is not whether Plaintiff ultimately succeeds, but whether the Complaint states a claim for relief. The facts pleaded in the Complaint, taken as true for purposes of this motion, establish an entitlement to equitable tolling.

As discussed above, the doctrine of equitable tolling is rooted in equity, which means there is no one-size-fits-all definition or application of the doctrine. *Davis*, 953 F.3d at 590. Much of the case law derives from habeas corpus petitions, and the verbiage in those cases reflects the appropriate context. Given the facts in the case at bar, any "tests" concerning "diligence" are

---

[4] ARG's actual argument involves a misinterpretation of what constitutes notice provided by public records, but the gist of its briefing implies this argument.

slightly less applicable, as Ms. Pitera did not know that ARG had cut her out of the process and prevented her from defending herself in court.  Accordingly, the most applicable definition here is:

> If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.

*Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  Above all, courts focus on "reasonableness."  *See Davis*, 953 F.3d at 590 ("The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence'").  In any event, this is not a scenario where Ms. Pitera has been negligent or failed to pursue her rights, which are the attributes that disqualify a party from invoking equitable tolling.  *Hensley*, 531 F.3d at 1057–58.

Here, Ms. Pitera had no way of knowing that ARG had secretly moved for a default judgment.  Indeed, the law contains a mechanism by which a party is apprised of developments in a case, which is the requirement that the party be served with required notices and filings.  A reasonable person would rely on the law.

To the extent that ARG argues that Ms. Pitera was somehow required to check the court file, that is a textbook definition of something which is *unreasonable*.  When someone is already entitled by law to notice of any motion for default, ***there is no reason that person would check the court record***.  By ARG's rationale, a person should check the filings in every court in every county of this state "just in case" someone claims they were served with a lawsuit – the way that someone would know they were served with a lawsuit would be the process server giving them the summons.

The *very next action* taken by ARG was renewal of the judgment.  This was the first time Ms. Pitera learned that a judgment had been entered, and in less than one month, she invoked her

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

rights and brought this case.  To the extent she needs to show "diligence," this qualifies as diligent pursuit of her rights.

### 2. *Plaintiff has properly pleaded an entitlement to equitable estoppel*

Plaintiff's claims are also viable under the doctrine of equitable estoppel, which would prevent ARG from raising a statute of limitations defense based upon its own conduct.  Not only did ARG obtain a default judgment without providing legally-required notice to Ms. Pitera (thus giving her no reason to know that any wrongful actions had occurred), but ARG made the affirmative statement in its February 27, 2012 letter that it would proceed "as provided by law." Complaint at Ex. D.   In this case, the law required notice of any motion for default.

Further, there is evidence of an improper purpose, as *on the same date* that ARG sent a letter stating it would be proceeding "as provided by law," ARG simultaneously moved for its covert default judgment contrary to law.  Complaint at Ex. E.

These facts satisfy the elements of equitable estoppel.  *Henderson*, 314 F.3d 409, 414.

### 3. *A recent Ninth Circuit case properly applied equitable tolling to a similar case*

In a case involving similar facts – namely, a debt collector improperly obtained a covert default judgment by failing to serve required notice on a party who had appeared – the Ninth Circuit held that the plaintiff's FDCPA claims were timely.  *Weinstein v. Mandarich Law Grp., LLP*, 798 Fed. Appx. 88, 90 (9th Cir. 2019).  In Weinstein, the debt collector unlawfully moved for a default judgment (by failing to provide notice) in 2015, but the plaintiff first learned of the default judgment upon a wage garnishment in 2017, and filed suit shortly thereafter.[5]

---

[5] A more detailed set of facts appears in Judge Martinez' order granting summary judgment.  *Weinstein v. Mandarich Law Grp., LLP*, 2018 WL 6199249 at *2 (W.D. Wash. Nov. 28, 2018).

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 17
2:22-CV-00255-TL

ANDERSON│SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1     The Ninth Circuit rejected the debt collector's arguments that *Rotkiske* barred the FDCPA

2 claims, as the district court had also relied on equitable tolling.   *Weinstein*, 798 Fed. Appx. at 90;

3 *Weinstein*, 2018 WL 6199249 at *3.   The Ninth Circuit's reasoning was brief, as it should have

4 been – it affirmed the district court on its exercise of discretion in applying equitable tolling.   It is

5 no surprise that the case is unpublished; both before and after *Rotkiske*, equitable tolling remained

6 viable, so this was no change in the law.

7     Confusingly, ARG takes issue with *Weinstein* by arguing that the Ninth Circuit "did not

8 have law before it clearly showing the default judgment was only voidable."  Dkt. #5 at 8, lines

9 12-13.  That was not at issue in *Weinstein*, and the distinction between void and voidable is totally

10 irrelevant to this case.

11     In any event, Plaintiff would argue that Judge Martinez correctly apprehended the issue in

12 *Weinstein*, as there was no basis for Mr. Weinstein to have known of the default judgment until

13 the debt collector took action to enforce it, and the Ninth Circuit agreed.  Just as Mr. Weinstein's

14 claims were viable, so are Ms. Pitera's.

15 **G.  Plaintiff's CPA Claims Are Timely**

16     Ms. Pitera's state law claims arise from violations of the Washington Collection Agency

17 Act ("WCAA"), which is enforced via the Consumer Protection Act ("CPA").   *See* RCW

18 19.16.440, 19.86.090.

19     Defendant ARG concedes that the discovery rule applies to such claims[6] but argues that

20 the discovery rule does not apply "when the facts are a matter of public record."  Dkt. #5 at 4.  The

21

22

23

---

[6] *See*, *e.g.*, *Mayer v. Sto Indus. Inc.*, 123 Wn.App. 443, 463 (2004), *affirmed in part*, *reversed in part on other grounds*, 156 Wn.2d 677 (2006).

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1    crux of ARG's argument is rooted in a piecemeal quotation from *Shepard v. Holmes*, 185 Wn.

2    App. 730, 739 (2014), though this omits the context of the quotation.

3           What *Shepard* actually discussed was a cause of action "for relief upon the ground of fraud"

4    and that such actions are governed by the statute of limitations in RCW 4.16.080(4).  However,

5    for such fraud-based causes of action, ***the statute itself*** includes a variant of the discovery rule, as

6    the limitations period does not begin to run until "until the discovery by the aggrieved party of the

7    facts constituting the fraud."  *Shepard*, 185 Wn.App. at 740.

8        **H.  ARG's Arguments Concerning Void Judgments Are Inapplicable**

9           Section E of ARG's briefing is a bit difficult to understand, as it discusses whether the

10   judgment is void or voidable.  Dkt. #5 at 6-8.  Nothing therein is relevant to this case.

11          Ms. Pitera's claims are fundamentally almost identical to those in *Weinstein*, *supra*.  ARG

12   violated the FDCPA by wrongfully failing to give Ms. Pitera notice of its motion for default

13   judgment, thus obtaining a covert default judgment and depriving Ms. Pitera of the ability to

14   defend herself.  She was only able to learn of the wrongful activity once ARG took its next action,

15   which happened to be many years later.

16          To the extent that ARG argues that its conduct in 2022 (renewing the judgment) did not

17   violate the FDCPA, Plaintiff would again direct this Court to the *Weinstein* case, where the debt

18   collector violated the FDCPA by pursuing its ill-gotten default judgment.    ARG cannot

19   meaningfully argue that renewing a judgment is not an attempt to collect a debt, especially where

20   its renewal was sent to Ms. Pitera directly and recited the exact number of dollars it claimed that

21   she owed.  Complaint at ¶ 15.

22   //

23   //

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 19
2:22-CV-00255-TL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1

I.  **In The Alternative, Plaintiff Respectfully Requests Leave To Amend**

2

Dismissal without leave to amend is proper only where it is clear that "the complaint could

3

not be saved by any amendment." *In re Daou Sys., Inc.,* 411 F.3d 1006, 1013 (9th Cir. 2005).

4

Here, Defendant ARG violated the FDCPA and, while Plaintiff believes she has pleaded sufficient

5

facts to establish an entitlement to equitable tolling or estoppel, Plaintiff could elaborate on such

6

facts if necessary.  To the extent that Defendant's motion succeeds, Plaintiff respectfully requests

7

leave to amend the Complaint.

8

IV.    **CONCLUSION**

9

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Rule 12(b)(6)

10

motion to dismiss be denied.

11

12

Dated this 28th day of March, 2022.

13

**ANDERSON SANTIAGO, PLLC**

14

By: _/s/ Jason D. Anderson_
Jason D. Anderson, WSBA No. 38014

15

T. Tyler Santiago, WSBA No. 46004
Attorney for Plaintiff

16

787 Maynard Ave. S.
Seattle, WA 98104

17

(206) 395-2665
(206) 395-2719 (fax)

18

19

20

21

22

23

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 20
2:22-CV-00255-TL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719