UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SARAH PITERA,

                Plaintiff(s),

    v.

ASSET RECOVERY GROUP INC.,

                Defendant(s).

CASE NO. 2:22-cv-00255-TL

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

    Plaintiff Sarah Pitera brings claims against Defendant Asset Recovery Group, Inc. (ARG) for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Washington Consumer Protection Act. RCW 19.86 *et seq*. This matter is before the Court on Defendant's Rule 12(b)(6) Motion to Dismiss. Dkt. No. 5. The Court finds that Plaintiff has plausibly stated claims for relief in her Complaint and DENIES Defendant's motion to dismiss.

**I.    RELEVANT FACTS**

    In January 2012, Defendant initiated an action in state court to collect on a debt Plaintiff allegedly owed. Dkt. No. 5 at 2. After being served with the lawsuit in January, Plaintiff corresponded with Defendant in two letters between January and late February 2012. *Id.*

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 1

Believing the bill at issue had already been paid in full, Plaintiff's first letter informed Defendant that the debt was "<u>disputed</u> and validation is requested." Dkt. 1-1 at 11 (emphasis in original); *see also* Dkt. No. 1-1 at 3, ¶¶ 5-6; Dkt. No. 10 at 4-5. Plaintiff specifically requested three pieces of information: (1) "[a] simple accounting of the debt;" (2) the name and address of the original creditor as well as the account number; and (3) proof that defendant was licensed to collect the debt. Dkt. No. 1-1 at 11. After receiving what she believed to be an inadequate response to her first letter, Plaintiff sent another letter to Defendant, again notifying it that "your claim is <u>disputed</u> and validation is requested" *Id.* at 15-16 (emphasis in original); *see also* Dkt. No. 10 at 5. Once again, Plaintiff requested Defendant provide her with the same information she asked for in her previous letter, including "[a] simple accounting of the debt." Dkt. No. 1-1 at 15. In a letter dated February 27, 2012, Defendant responded by providing the name and address of the creditor but failed to provide any additional information regarding the actual debt. *Id.* at 18. Defendant invited Plaintiff to contact defense counsel's legal assistant by March 12, 2012, if she was interested in attempting to resolve the disputed debt, otherwise Defendant would "proceed as provided by law." *Id.* at 18. Plaintiff then contacted both the original creditor—a medical treatment provider—and her health insurance carrier to confirm whether the debt had already been paid and "was confident that ARG had ascertained that she did not owe money." *Id.* at 2, ¶ 10. Plaintiff and Defendant had no further contact.

Without providing notice to Plaintiff, on March 5—a week before the date on which defense counsel invited Plaintiff to make contact to resolve the matter—Defendant sought a default judgment in state court that was granted and entered on March 7, 2012. Dkt. No. 12 at 8. Despite its post-service correspondence with Plaintiff in which she emphasized that she disputed the claim, Defendant attested in its Motion and Declaration for Default Judgment filed in state court that Plaintiff "has not appeared." Dkt. No. 1-1 at 3, ¶ 12, *see also id.* at 21, ¶ 2. Plaintiff

had "no idea" that a motion for default had been made or a judgment had been entered against her. *Id.* at 3, ¶ 14.

Defendant took no action to collect on the default judgment for 10 years. Dkt. No. 1-1 at 3, ¶ 16; *see also* Dkt. No. 5 at 2. On February 7, 2022, Defendant requested and received an order in state court extending the judgment against Plaintiff. Dkt. No. 1-1 at 3, ¶ 15; Dkt. No. 5 at 2, n.1. Defendant's renewed attempt to collect on this decade-old judgment prompted Plaintiff to file the instant action in state court raising claims under both federal and state laws prohibiting deceptive debt collection practices. *See generally* Dkt. No. 1-1. Defendant then removed the action to federal court pursuant to 28 U.S.C. § 1441.

## II.   LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "states a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). To survive a motion to dismiss, a plaintiff need only cite facts supporting a "plausible" claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). While a court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672.

## III.   DISCUSSION

Plaintiff claims that Defendant's actions in securing the default judgment in 2012 and then waiting 10 years to attempt to collect on the judgment violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and analogous provisions found in Washington's Consumer Protection statues ("WCPA"), RCW 19.86 *et seq. See generally* Dkt.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 3

No. 1-1. These statutes were enacted "'to eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses.'" *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (quoting 15 U.S.C. § 1692(e)).

Defendant argues that Plaintiff's complaint fails to state a claim upon which relief can be granted because her claims regarding the 2012 default judgment are time barred without an equitable doctrine to provide relief from the applicable statutes of limitations. Dkt. No. 5 at 3-6. Defendant also argues that because it cannot be held liable for its actions in 2012, its actions 10 years later to collect on an otherwise lawfully renewed judgment could not have violated the FDCPA or WCPA as a matter of law. *Id.* at 6-8.

Taking the factual allegations in Plaintiff's Complaint as true, *Iqbal*, 556 U.S. at 678, the Court finds that Plaintiff has stated a plausible claim for equitable relief from the applicable statutes of limitations and raises a reasonable inference that Defendant's debt collection activities violated the FDCPA and WCPA.

### A.   Equitable Relief from Statutes of Limitations for Claims Based on 2012 Default Judgment

The statute of limitations for Plaintiff's FDCPA claims is one year. 15 U.S.C. § 1692k(d). The statute of limitations for Plaintiff's WCPA claims is four years. RCW 19.86.120. Plaintiff's untimely claims must be dismissed as time barred unless she plausibly pleads a claim for equitable relief from the statutes of limitations. *See Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946).

#### 1.   The Application of Equitable Doctrines to Default Judgments

As an initial matter, the Court rejects Defendant's argument that the public nature of the 2012 state court proceedings categorically bars the application of equitable doctrines to the claims based on the 2012 default judgment. Dkt. No 5 at 5. First, as the Ninth Circuit has held,

"the benefits of equitable doctrines is that they allow courts to fashion remedies tailored to the circumstances of the case, within the bounds of governing" legal standards, and therefore resist the development of such "mechanical rules." *Smith v. Davis*, 953 F.3d 582, 599-600, n.9 (9th Cir.), *cert. denied*, 141 S. Ct. 878 (2020); *see also Holmberg*, 327 U.S. at 396 ("Equity eschews mechanical rules; it depends on flexibility.").

Second, default judgments are disfavored because "'[c]ases should be decided upon their merits whenever reasonably possible.'" *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)); *see also Morin v. Burris*, 161 P.3d 956, 961 (Wash. 2007) (en banc) (same). Proceedings to vacate or set aside default judgments are equitable in character, and "the relief sought or afforded is to be administered in accordance with equitable principles and terms." *Morin*, 161 P.3d at 961; *see also TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001) (noting that the concept of vacating a default judgment under the Federal Rules of Civil Procedure "is a general equitable one"), *as amended on denial of reh'g and reh'g en banc* (May 9, 2001). Thus, it has been the practice of the Washington Supreme Court to set aside default judgments liberally. *Morin*, 161 P.3d at 961. Given the nature of the Plaintiff's claims, which would result in the setting aside of a state court default judgment, the Court finds these principles should apply with equal force here.

Plaintiff raises several forms of potential equitable relief that could save the 2012-based claims, including the discovery rule, equitable tolling, and equitable estoppel.[1] Because the Court

---

[1] The Court notes that Plaintiff's Complaint also references the continuing violation doctrine as a potential source of relief from the lapsed limitations period. Dkt. No. 1-1 at ¶ 24. This doctrine was not briefed by either party. Because the Court finds that Plaintiff's claims survive this motion on other grounds, the Court will not address whether Plaintiff's Complaint states a claim for relief from the statutes of limitations on this alternate grounds.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 5

finds the doctrine of equitable estoppel applies in this case for the reasons discussed below, it will not address the discovery rule or equitable tolling.

### 2. Equitable Estoppel

The doctrine of equitable estoppel allows the Court to prevent a defendant "from setting up a statute-of-limitations defense when [the defendant's] own prior representations or conduct have caused the plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible for that result." *Allen v. A.H. Robins Co., Inc.*, 752 F.2d 1365, 1371–72 (9th Cir. 1985). "The doctrine . . . is based on the principle that a party should not be allowed to benefit from its own wrongdoing. . . . [and] focuses primarily on the actions taken by the defendant." *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (internal quotations omitted) (citing *Collins v. Gee W. Seattle LLC*, 631 F.3d 1001, 1004 (9th Cir. 2011) and *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000)). To state a claim for equitable estoppel, Plaintiff must plead facts that plausibly assert "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." *Amaro*, 653 F.3d at 813 (citing *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir.1991)).

### a) *Knowledge of the true facts by the party to be estopped*

Defendant had post-service communications with Plaintiff in 2012, through which Defendant was put on notice that Plaintiff disputed the validity of the debt that was the subject of its lawsuit. Dkt. No. 1-1 at 11, 15-16. Yet, when Defendant moved for default judgment, it represented to the court that Plaintiff had not appeared in the action to avoid having to provide Plaintiff with advanced notice. Dkt. No. 1-1 at 12, ¶ 12; *see also id.* at 21, ¶ 2.

Washington State Superior Court Rules state that "[a]ny party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the

supporting affidavit at least 5 days before the hearing on the motion." CR 55(a)(3). Washington courts do "not exalt[] form over substance and [allow] appearance [to] be accomplished informally," *Morin*, 161 P.3d at 964, and therefore "repeatedly allow informal acts to constitute appearance," *Servatron, Inc.*, 346 P.3d at 835 (collecting cases). As little as a single communication from a defendant after litigation has commenced may be enough to trigger the CR 55 notice requirement. *Sims v. Midland Funding LLC*, 2021 WL 1546135, at *3 (W.D. Wash. Apr. 20, 2021); *see also Sacotte Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 177 P.3d 1147, 1150–51 (Wash. Ct. App. 2008) (concluding an appearance was made when defense counsel made a single post-litigation phone call to plaintiff's counsel) (citing *Old Republic Nat'l Title Ins. Co. v. Law Office of Robert E. Brandt, PLLC*, 174 P.3d 133, 135–36 (Wash. Ct. App. 2007)). Taking Plaintiff's claims as true and construing all reasonable inferences in her favor, there can be no doubt that Defendant's counsel knew or should have known that its communications with Plaintiff after initiating the litigation in 2012 could be construed as an informal appearance triggering the CR 55 notice requirement.

> b) *Intent to induce reliance and actions giving rise to a belief in that intent*

Plaintiff argues that she was reasonably induced not to pursue her claims regarding Defendant's attempts to collect on the disputed debt because of Defendant's assertion in its February 27, 2012, letter that "it would be proceeding 'as provided by law.'" Dkt. No. 10 at 17 (quoting Dkt. No. 1-1 at 18). Plaintiff believed that because the alleged debt had already been paid, and was therefore legally invalid, Defendant would not press the disputed debt beyond her initial correspondences. *See* Dkt. No. 1-1 at 2-3, ¶ 10; *id.* at 4-5, ¶ 23. Plaintiff emphasized in both of her post-service communications with Defendant that she disputed the alleged debt (Dkt. No. 1-1 at 11, 15-16), triggering the CR 55 notice requirement under Washington law. *See*

*Sacotte Constr.*, 177 P.3d at 1150–51. Plaintiff's reliance on Defendant proceeding as provided by law was reasonable because Defendant's counsel—who drafted the February 27 letter—had a legal obligation (*see* Fed. R. Civ. Proc. 11) and an ethical duty of candor (*see* Mod. Code of Prof. Conduct r. 3.3) separate and distinct from the protections provided under the FDCPA and WCPA.[2]

Instead, Defendant moved for default judgment a week *before* the March 12, 2012, deadline it included in its February 27 letter to Plaintiff offering her an opportunity to resolve the dispute out of court.[3] Dkt. No. 12 at 8 (admitting that Defendant moved for default judgment on March 5, 2012); *see also* Dkt. No. 1-1 at 18, 20. Defendant potentially perpetrated a fraud on the court to avoid having to provide Plaintiff with advanced notice of its motion for default judgment. *See* Dkt. No. 1-1 at 20-23 (moving for default under "CRLJ 55(a)(1) *and (b)(1)*" and declaring under penalty of perjury that "[t]o the best of [its] knowledge and belief, [Ms. Pitera] has not appeared" (emphasis added)); *see also Morin*, 161 P.3d at 964; *Sacotte Constr.*, 177 P.3d at 1150–51; *Colacurcio v. Burger*, 41 P.3d 506, 508 (2002). Defendant then allowed post-judgment interest to accrue for nearly 10 years before acting on the judgment (Dkt. No. 1-1 at 3, ¶ 15)—conveniently, enough time to ensure a statute of limitations defense to any possible challenge to the judgment (Dkt. No. 5 at 3-7). Plaintiff's allegations raise a reasonable inference that Defendant's February 27 letter was designed, at the very least, to induce her to take no further action to dispute the debt, which allowed Defendant to surreptitiously seek the default

---

[2] The Court completely rejects Defendant's argument that the existence of the consumer protection statutes makes it "nonsensical" for Plaintiff to have relied on Defendant—or more aptly, Defendant's counsel—to follow the law. Dkt, No, 12 at 5.

[3] The Court acknowledges that in her Complaint and opposition briefing (Dkt. Nos. 1-1 at ¶ 11; 10 at 5), Plaintiff confused the date on which Defendant prepared and signed the motion for default judgment with the date the motion was filed. *See* Dkt. No. 12 at 8. Plaintiff's error does not change the reasonable inferences that can be drawn from the facts related to the actual sequence of events.

judgment. Dkt. No 1-1 at 3, Dkt. No. 10 at 17. Defendant's post-judgment actions reinforce the inference of wrongful intent.

### c) Ignorance of the true facts by the relying party

Plaintiff asserts she was unaware of the default judgment because Defendant intentionally avoided providing legally required notice of its motion by fraudulently representing to the state court that Plaintiff had not appeared in the case contrary to controlling law. Dkt. No. 1-1 at 3, ¶¶ 11-12. Defendant does not dispute that it failed to provide Plaintiff with notice before seeking default judgment in 2012. Dkt. No. 12 at 1 (acknowledging that "[f]or the purposes of this motion, we must assume the facts are construed in favor of Plaintiff"). Defendant also acknowledges that it "took no action" between March 2012 and February 2022 after securing the judgment. Dkt. No. 5 at 2. Thus, construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff was ignorant of Defendant's actions in securing the judgment.

### d) Detrimental reliance

Plaintiff's reliance on the February 27, 2012, letter from Defendant was clearly detrimental because it allowed Defendant to secure the default judgment without Plaintiff's notice. The fact that Plaintiff acted swiftly to assert her claims upon receiving notice of Defendant's renewal of the judgment in February 2022 (Dkt. No. 10 at 5), indicates that she would have contested the default judgment in 2012 had Defendant provided notice at that time. Thus, it is reasonable to infer that Plaintiff would have asserted her FDCPA and WCPA claims in a timely fashion but-for Defendant's allegedly fraudulent misrepresentation to the state court, which contradicted its representations to Plaintiff in its February 27 letter. Not only did Plaintiff's reliance result in the judgment against her, but it also allowed Defendant to wait more than a decade to act on it—well after the running of the limitations periods for any potential challenge—all the while allowing post-judgment interest to accrue. Dkt. No. 1-1 at ¶¶ 12-15.

The Court therefore finds that Plaintiff has plausibly asserted a claim for equitable estoppel. Taking Plaintiff's facts as true, the Court further finds that it is equitable to estop Defendant from asserting any statute of limitations defense to bar Plaintiff's claims regarding Defendant's efforts to secure the 2012 default judgment.

### B.   Claims Based on February 2022 Renewal of Default Judgment

Defendant argues that it cannot be held liable under the FDCPA or WCPA for renewing an otherwise valid judgment. Dkt. No. 5 at 6-8. This assertion is premised on Defendant's argument that Plaintiff's claims based on its 2012 actions to secure the judgment are time barred, and Plaintiff failed to challenge the judgment within the timeframes allowed in state court. *Id.* Defendant's argument therefore fails because the Court has determined that Plaintiff's 2012-related claims are not time barred. By Defendant's own logic, if Plaintiff is able to prove that Defendant violated the FDCPA or WCPA in securing the 2012 default judgment, Defendant could plausibly also be liable under the statutes for its efforts to collect on the judgment in 2022.

### IV.   CONCLUSION

Accordingly, Defendant's motion to dismiss is DENIED.

Dated this 26th day of August 2022.

Tana Lin
United States District Judge