UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SARAH PITERA,<br><br>            Plaintiff,<br><br>     v.<br><br>ASSET RECOVERY GROUP INC.,<br><br>            Defendant. | CASE NO. 2:22-cv-00255-TL<br><br>ORDER DENYING SUMMARY JUDGMENT |

Plaintiff Sarah Pitera brings claims against Defendant Asset Recovery Group, Inc. ("ARG"), for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Washington Consumer Protection Act ("WCPA"), RCW 19.86 *et seq.* This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 27) and Defendant's Motion for Summary Judgment (Dkt. No. 29). Having reviewed the relevant record, including the Parties' respective motions, opposition briefing (Dkt. Nos. 30, 36), reply briefing (Dkt. Nos. 35, 37), and related documents, the Court DENIES the Parties' cross motions for summary judgment.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted.

In 2011, ARG, a debt collection agency, was assigned Ms. Pitera's medical-billing account from The Polyclinic in Seattle showing a balance owed of $2,627. Dkt. No. 29 at 2. Between July and September 2011, the Parties corresponded about the alleged debt. *Id.* Ms. Pitera believes that the alleged medical bills were covered by her medical insurance, which ARG disputes. *Id.*; Dkt. No. 27 at 3. In November 2011, ARG retained the law firm Nancy A. Smith & Associates to act on its behalf in relation to Ms. Pitera's debt-collection account and initiated a lawsuit against Ms. Pitera in King County Superior Court. Dkt. No. 29 at 2. The summons sent to Ms. Pitera directed her to state her defense to the collection efforts in writing "***and serve a copy upon the undersigned attorney for [ARG].***"[1] Dkt. No. 31-1 at 4 (emphasis added).

After being served with the lawsuit in January 2012, Ms. Pitera corresponded with ARG between January and late February 2012. In her initial letter, Ms. Pitera stated that the letter was "being sent in response to a complaint/summons" that she had received. Dkt. No. 27-2 at 5. Ms. Pitera explicitly disputed the alleged debt, writing: "This is a notice sent pursuant to the Fair Debt Collection Act, 15 USC 1692 *disputed* and validation is requested." *Id.* (emphasis in original). In addition to requesting "validation made pursuant to the above named title and section [of the FDCPA, 15 U.S.C. § 1692]," Ms. Pitera requested additional information,

---

[1] ARG has not provided any authority in support of its attempt to convince the Court to view ARG as a separate entity from its own retained counsel for purposes of assessing the sufficiency of Ms. Pitera's claims. *See* Dkt. Nos. 29, 30 *passim*. ARG's lack of authority is even more glaring given Ms. Pitera specifically points out in her motion "that in both state and federal court, corporations can only act in legal proceedings through counsel." Dkt. No. 27 at 7 (citing *Cottringer v. State Dep't of Emp. Sec.*, 162 Wn. App. 782, 787, 255 P.3d 835 (2011) and *In re Am. W. Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994)). If ARG is suggesting that Ms. Pitera was obligated to provide or serve it with copies of her correspondence—either in addition to or instead of its legal counsel—the Court finds this argument would approach the bounds of frivolousness. The Court will generally refer to ARG throughout this order, even if the specific refence is attributable to its legal counsel acting on its behalf.

ORDER DENYING SUMMARY JUDGMENT - 2

1  including: (1) "[a] simple accounting of the debt"; (2) the name and address of the original
2  creditor as well as the account number; and (3) proof that defendant was licensed to collect the
3  debt. *Id.*

4  ARG responded with a letter from its counsel dated February 6, 2012 ("February 6th
5  Letter"), thanking Ms. Pitera for her letter and acknowledging having received it on January 27,
6  2012. Dkt. No. 27-2 at 7. ARG wrote: "Pursuant to your request, I enclose copies of: (1) The
7  validation notice, served with your Summons and Complaint. (2) Verification of the debt at issue
8  in this matter; and (3) A copy of the Washington State records evidencing our client's
9  registration as a collection agency." *Id.* ARG instructed Ms. Pitera that "[if she] continue[s] to
10 dispute this debt, please indicate in writing your intent to file an Answer with the Court." *Id.*
11 ARG also stated that "[b]efore proceeding further with our litigation, we wanted . . . to see if you
12 are now interested in settling this matter" and, if so, requesting that she respond within 14 days.
13 *Id.* ARG advised that any settlement "negotiations do not otherwise limit our ability to proceed
14 as provided by law." *Id.*

15 Ms. Pitera responded to the February 6th Letter by sending another letter, where she
16 acknowledged receiving ARG's response on or about February 9, 2012. Dkt. No. 27-2 at 9–10.
17 Ms. Pitera again specifically stated that she disputed the debt, writing: "I'm writing you this
18 letter because I requested, and still must request validation of debt. Be advised that this is not a
19 refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 USC
20 1692(g) that your claim is <u>disputed</u> and validation is requested." *Id.* (emphasis in original). She
21 reiterated that in her first letter, she requested and was still waiting for "(A) A simple accounting
22 of the debt. (B) The NAME and ADDRESS of the original creditor, and the original account

23

24

ORDER DENYING SUMMARY JUDGMENT - 3

number. (C) Proof that you are licensed to collect in my state and provide me with your license numbers and registered agent." *Id.* (emphasis omitted).[2]

In a subsequent letter dated February 27, 2012, ARG again responded to Ms. Pitera, detailing her initial request for verification—which ARG acknowledged had been received on or about January 27, 2012—and referencing the February 6 Letter in which an additional copy of the validation notice, verification of debt, and client registration as a collection agency had been provided. Dkt. No. 27-2 at 12. ARG also acknowledged receiving a second request in writing from Ms. Pitera on or about February 23, 2012, for "the original creditor's name (previously provided) and address (previously provided orally by phone)." *Id.* ARG further stated: "Here is an additional written response to the same request (1) original creditor; Polyclinic; (2) address: 1145 Broadway, Seattle, WA 98122." *Id.* ARG then invited Ms. Pitera to contact its retained counsel's legal assistant by March 12, 2012, if she was interested in attempting to resolve the disputed debt; otherwise ARG would "proceed as provided by law." *Id.* Ms. Pitera and ARG had no further contact.

Without providing notice to Ms. Pitera, on March 5, 2012—a week before the date on which ARG invited Ms. Pitera to make contact to resolve the matter—ARG sought a default judgment in state court that was granted and entered on March 7, 2012. Dkt. No. 27-1 at 8–13. ARG attested in its Motion and Declaration for Default Judgment filed in state court that Ms. Pitera "has not appeared." *Id.* at 9. Ms. Pitera was not aware that a motion for default had been made or a judgment had been entered against her. Dkt. No. 27 at 4. ARG took no action to collect on the default judgment for 10 years. Dkt. No. 29 at 6 (admitting that "[b]etween on or about March 7, 2012 and February 2022, Asset took no action on Asset's Judgment"). On

---

[2] While not duplicated here, the Court notes that the word "ADDRESS" was underlined three times in Ms. Pitera's hand-written letter. Dkt. No. 27-2 at 9.

February 7, 2022, ARG reengaged with Ms. Pitera regarding its intent to seek an order extending the default judgment, which was set to expire on March 7, 2022. Dkt. No. 29 at 7; *see also* Dkt. No. 31-5 at 1–12. ARG's renewed attempts to collect on this decade-old judgment prompted Ms. Pitera to file the instant action in state court raising claims under both federal and state laws prohibiting deceptive debt-collection practices. Dkt. No. 1-1. ARG then removed the action to federal court pursuant to 28 U.S.C. § 1441. Dkt. No. 1.

## II.   Legal Standard

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and quotation omitted). The court rules on each motion "on an individual and separate basis." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2720 (3d ed. 1998)).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The court must draw all justifiable inferences in favor of the non-movant. *Id.* at 255. The court does not make credibility determinations or weigh evidence at this stage. *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("[W]here the facts specifically averred by [the non-moving]

party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied.").

If the non-movant bears the burden of proof at trial, the movant only needs to show an absence of evidence to support the non-movant's case. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once such a showing is made, the burden shifts to the non-movant to show more than the mere existence of a scintilla of evidence in support of its case—the party must show sufficient evidence that a jury could reasonably find for the non-movant. *Id.* (citing *Anderson*, 477 U.S. at 252). Even if the non-movant does not have the burden of proof at trial, it must nonetheless show that a genuine issue of material fact exists by presenting evidence in its favor. *F.T.C. v. Stefanchik*, 559 F.3d 924, 929–30 (9th Cir. 2009) (affirming summary judgment for plaintiff where defendants failed to show significantly probative evidence to dispute plaintiff's evidence).

### III.   DISCUSSION

Ms. Pitera moves for partial summary judgment as to ARG's liability under the FDCPA and WCPA. Dkt. No. 27 at 5. In turn, ARG moves to dismiss all of Ms. Pitera's claims on summary judgment, arguing that she: (1) fails to establish an injury in fact sufficient to assert standing in federal court; (2) is barred from asserting her claims by the relevant statutes of limitations; and (3) cannot establish the required elements of her claims under the relevant statutes. Dkt. No. 29 at 1. Additionally, ARG challenges most of the documentary evidence upon which Ms. Pitera relies. *Id.* at 3–6. The Court will first address ARG's evidentiary concerns. Then, because they are threshold issues, the Court will turn to ARG's standing and statute of limitations arguments before considering the underlying statutory claims.

A.     **Evidentiary Issues**

Ms. Pitera's arguments on summary judgment rely heavily on the correspondence between herself and ARG's counsel in January and February 2012. *See* Dkt. No. 27 *passim*; *see also* Dkt. No. 27-2. In turn, much of ARG's briefing is aimed at undermining and discrediting this evidence, including by arguing or insinuating that it would be inadmissible at trial for various reasons. *See* Dkt. No. 29 at 3–6. On summary judgment, a district court may consider evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003)); *cf. Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (allowing consideration of affidavit on summary judgment despite hearsay and best evidence rule objections where underlying facts could be admissibly presented even if the affidavit itself were inadmissible).

ARG specifically challenges the ultimate admissibility of the copies of Ms. Pitera's hand-written letters attached as exhibits to the motion briefing. *See* Dkt. No. 29 at 3–6. To the extent ARG argues that the letters would be inadmissible at trial for lack of authentication, the argument fails because Ms. Pitera's testimony regarding the documents would be sufficient to meet the minimal authentication standards. *See* Fed. R. Evid. 901. Therefore, the evidence could be provided in admissible form at trial.

ARG also asserts that the first time it ever saw a copy of the February 6th Letter, or the subsequent letter dated February 27, 2012, sent by its counsel—who ARG specifically hired to handle the debt collection lawsuit—was not until after this action was commenced in 2022. Dkt. No. 30 at 5. ARG spills considerable ink detailing several issues it had with the various counsel it hired to handle the collection of this debt: (1) the lead counsel retained to handle the lawsuit passed away from complications due to alcoholism; (2) the associate attorney handling the case,

who signed the letters, was terminated several days after the lead counsel's death; and (3) subsequent counsel that ARG hired did not make collection of the default judgment a priority "at Asset's direction." Dkt. No. 30 at 9. Any problems ARG may have had with its former counsel are between ARG and its former counsel but are not germane to the issues in this case. *See supra* note 1. Regardless, based on ARG's own evidence—*i.e.*, ARG's counsel who appears to have written the letters admits that both documents include his signature (Dkt. No. 32 ¶¶ 11, 14)— the letters could be admissible at trial.

Finally, ARG also argues that the copy of the February 6th Letter used as an exhibit is incomplete and should be disregarded by the Court. Dkt. No. 29 at 4–5. ARG cites no authority for this proposition, but the Court presumes it is referring to Federal Rule of Evidence 106, which states that if a party introduces part of a writing, an adverse party may require the introduction of any other part of the writing "that in fairness ought to be considered at the same time." Given the letter at issue is one sent by ARG's counsel, ARG should have been able to produce it during discovery, and therefore, the Court presumes it will be available at trial should ARG continue to press this argument.

As it appears the all the correspondence at issue could be admissible at trial, the Court FINDS that it is appropriate to consider all of the challenged documentary evidence on summary judgment.

**B.     Standing**

Ms. Pitera has standing to assert her statutory claims in federal court. "Standing" examines whether a plaintiff is entitled to bring claims before the court and is an essential ingredient of determining a court's jurisdiction. *See Perry v. Newsom*, 18 F.4th 622, 630–31 (9th Cir. 2021). For Ms. Pitera to have standing, she must demonstrate an injury that is "concrete, particularized, and actual or imminent" (also known as an "injury-in-fact"), that the injury is

"fairly traceable to the challenged action," and that such injury is "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). For an injury-in-fact to be "concrete," the injury "must actually exist." *Perry*, 18 F.4th at 631 (quoting *Spokeo v. Robins*, 578 U.S. 330, 1548 (2016)). And for an injury-in-fact to be "particularized," the injury must affect the claimant "in a personal and individual way." *Id.* (quoting *Spokeo*, 578 U.S. at 1548).

ARG's standing argument appears to turn entirely on its claim that Ms. Pitera cannot establish an injury because the underlying default judgment against her "is a final judgment that cannot be vacated." Dkt. No. 29 at 10. ARG provides no legal authority to support this proposition.[3] ARG's argument is also puzzling because Ms. Pitera's claim is brought pursuant to, *inter alia*, the Fair Debt Collection Practices Act, which covers actual as well as alleged debts. 15 U.S.C. § 1692a(5) ("The term 'debt' means *any obligation or alleged obligation* of a consumer to pay money . . . .") (emphasis added).

Further, Ms. Pitera's claims arise under federal and state statutes designed to protect consumers from unfair and deceptive debt-collection practices. Here, Ms. Pitera asserts that ARG (1) used false, deceptive or misleading representations in connection with the collection of a debt, and (2) used unfair or unconscionable means to collect a debt. Dkt. No. 27 at 8; Dkt. No. 1-1 ¶¶ 25-30. The Eleventh Circuit and multiple district courts have held that a violation of the FDCPA itself confers standing on a plaintiff. *See Linehan v. Allianceone Receivables Mgmt., Inc.*, No. C15-1012, 2016 WL 4765839, at *7–8 (W.D. Wash. Sept. 13, 2016) (collecting cases) (noting that the prohibited "practices [] themselves constitute a concrete injury" for the purpose of asserting standing to bring claims under the statutes); *accord Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016) (holding in a FDCPA case that the plaintiff "sufficiently

---

[3] Ms. Pitera chose to pursue FDCPA and WCPA claims, but it appears to the Court that she could have challenged the 2012 default judgment directly, per Washington Civil Rule 60, on the same set of facts.

alleged that she has sustained a concrete—*i.e.*, 'real'—injury . . . . [even though the alleged] injury may not have resulted in tangible economic or physical harm . . . [because] an injury need not be tangible to be concrete"); *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 827 (E.D. Va. 2015) ("The 'injury in fact' suffered by Plaintiffs under the FDCPA is . . . being subjected to the allegedly 'unfair and abusive practices' of the Collection Defendants." (quoting amended complaint)).

The Court therefore DENIES ARG's request for summary judgment dismissal for lack of standing.

### C.  Statutes of Limitations Defense and the Equitable Estoppel Doctrine

The statute of limitations for FDCPA claims is one year. 15 U.S.C. § 1692k(d). The statute of limitations for WCPA claims is four years. RCW 19.86.120. The Parties agree that Ms. Pitera's claims fail unless she can establish an exception to these limitations. Dkt. No. 27 at 9–13 (arguing for the application of equitable doctrines to avoid the limitations); Dkt. No. 29 at 11–18 (arguing that no equitable doctrines apply).

One doctrine briefed by the Parties that would allow Ms. Pitera's claims to proceed is equitable estoppel. In analyzing equitable estoppel, "[t]he test frequently applied by courts is whether a refusal to allow the plaintiff to rely on estoppel would, under the facts and circumstances of the case, permit a defendant who has engaged in fraudulent deception to thereby gain an advantage." *Allen v. A.H. Robins Co.*, 752 F.2d 1365, 1372 (9th Cir. 1985). To apply this test, a court considers a non-exhaustive list of factors including: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000); *see also Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011); *Bolt v. United States*, 944 F.2d

603, 609 (9th Cir. 1991). The Court previously analyzed these factors in determining that Ms. Pitera plausibly alleged a claim of equitable estoppel to survive ARG's motion to dismiss on statute of limitations grounds. *See* Dkt. No. 16 at 6–10. Ms. Pitera now argues that the Court's prior analysis at the pleadings stage is equally applicable on summary judgment because the determination "revolves around documents and their contents . . . [which] remain unchanged from those alleged in the Complaint . . . given the document-based nature of this case." Dkt. No. 27 at 10–11.

ARG disputes the admissibility of the documentary evidence relied on by Ms. Pitera, calls Ms. Pitera's credibility into question, and argues that the estoppel claim fails on the merits because there is no evidence of improper purpose on its part. Dkt. No. 29 at 13–14; Dkt. No. 30 at 18–20; Dkt. No. 37 at 5–9. The Court has already addressed the scope of evidence it may consider and its inability to make credibility determinations on summary judgment. *See supra* Section III.A. The Court will therefore only address ARG's substantive merits argument here.

### 1. Knowledge of the true facts by the party to be estopped

It is undisputed that when ARG moved for default judgment, it represented to the court that Ms. Pitera had not appeared in the action, thus avoiding having to provide Ms. Pitera with advance notice of the motion. Dkt. No. 27-1 at 8–11. Washington courts do "not exalt[] form over substance and [allow] appearance [to] be accomplished informally." *Morin v. Burris*, 160 Wn. 2d 745, 755, 161 P.3d 956 (2007). In fact, Washington courts have been found to "repeatedly allow informal acts to constitute appearance." *Servatron, Inc. v. Intelligent Wireless Prod., Inc.*, 186 Wn. App. 666, 675, 346 P.3d 831 (2015) (collecting cases).

As attorneys licensed to practice law in Washington, ARG's lawyers were duty-bound to be familiar with relevant law and to adequately communicate with ARG throughout their representation. *See,* RPC 1.1 ("A lawyer shall provide competent representation . . . . [which]

requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."), RPC 1.4 ("A lawyer shall . . . keep the client reasonably informed about the status of the matter . . . [and] explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.").

Here, Ms. Pitera has provided evidence that ARG's legal counsel exchanged communications with her after the lawsuit was initiated in 2012, which put ARG on notice that Ms. Pitera acknowledged the lawsuit and disputed the debt upon which it was based. *See* Dkt. No. 27-2 at 1–12. Thus, there is a dispute of material fact as to whether ARG's counsel, and by extension ARG (*see supra* note 1), knew or should have known that the communications could constitute an informal appearance by Ms. Pitera.

### 2. Intent to induce reliance and actions giving rise to a belief in that intent

Washington law requires ARG to provide Ms. Pitera with notice prior to seeking default judgment. *See* CR 55(a)(3); *see also Sims v. Midland Funding LLC*, No. C20-1230, 2021 WL 1546135, at *3 (W.D. Wash. Apr. 20, 2021) ("As little as a single communication from a defendant after litigation has commenced may be enough to trigger the notice requirement before attaining default judgment."). The post-lawsuit communications from ARG's counsel clearly indicated its intent to proceed "as provided by law." Dkt. No. 27-2 at 7, 12. Evidence of Ms. Pitera's belief that the debt was invalid and ARG's assurances that it would follow the law are sufficient to create a material dispute of fact as to whether Ms. Pitera was induced into relying on the lack of subsequent communications after the February 27 letter to mean that the issue was resolved requiring no further action on her part. Dkt. No. 27-2 at 2 ¶ 8.

### 3. Ignorance of the true facts by the relying party

It is undisputed that ARG never informed Ms. Pitera of its efforts to attain the default judgment against her and took no action on the judgment for nearly 10 years. The documentary evidence provided by Ms. Pitera is sufficient to create a material dispute of fact as to this factor.

### 4. Detrimental reliance

It is undisputed that Ms. Pitera received ARG's repeated assurances that it would "proceed as provided by law," yet ARG secured an *ex parte* default judgment against her. Further, ARG waited more than a decade to act on the judgment—well after the running of the statutory limitations periods for any potential challenge.

### 5. Lack of improper purpose evidence

ARG argues that Ms. Pitera's equitable estoppel claim fails because there is "no evidence that Asset's purpose was improper." Dkt. No. 29 at 13–14. In support of the proposition that a showing of improper purpose is required, ARG cites a California district court case listing "several factors" that courts consider when determining whether the doctrine applies, one of which it identifies as "'whether . . . the defendant's purpose was improper.'" *Id.* at 13 (quoting *Tompkins v. Union Pac. R. Co.*, No. C12-1481, 2013 WL 904897, at *3 (E.D. Cal. Mar. 8, 2013)).

At most, ARG's arguments undercut the inference of an "improper purpose" that could potentially arise from the factors discussed above. *See* Dkt. No. 29 at 14 (relying heavily on the legally insignificant rhetorical distinction between its own and its retained counsel's actions in securing the underlying default judgment in 2012). But even if ARG does raise a factual dispute as to improper purpose, that is just one non-dispositive factor the Court can consider in determining whether equitable estoppel applies, which is not enough for the Court to conclude that the doctrine does not apply as a matter of law.

ORDER DENYING SUMMARY JUDGMENT - 13

### 6. A trier of fact could find that equitable estoppel applies

The doctrine of equitable estoppel allows the Court to prevent a defendant "from setting up a statute-of-limitations defense when [the defendant's] own prior representations or conduct have caused the plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible for that result." *Allen*, 752 F.2d at 1371–72. "The doctrine . . . is based on the principle that a party 'should not be allowed to benefit from its own wrongdoing.' . . . [and] 'focuses primarily on the actions taken by the defendant.'" *Amaro*, 653 F.3d at 813 (first quoting *Collins v. Gee W. Seattle LLC*, 631 F.3d 1001, 1004 (9th Cir. 2011); then quoting *Santa Maria*, 202 F.3d at 1176)). At a minimum, Ms. Pitera has presented evidence from which a trier of fact could find that the equitable estoppel doctrine should apply in this case. On the other hand, ARG raises arguments about the admissibility and credibility of the evidence Ms. Pitera relies on that could plausibly prevent such a finding at trial—arguments that are sufficient primarily because the Court cannot make credibility determinations on summary judgment. As such, the Court finds there are material disputes of fact as to the applicability of the equitable estoppel doctrine and therefore DENIES both ARG's and Plaintiff's request for summary judgment on statute of limitations grounds.[4]

## D. Statutory Liability

The Parties cross-move for summary judgment as to ARG's liability under the relevant statutes. As is often the case in such circumstances, the Parties both point to facts from which a

---

[4] The Parties briefed arguments regarding several other equitable doctrines in relation to ARG's statute of limitations defense. Ms. Pitera's estoppel claim survives summary judgment, thus the Court need not and will not address any alternate doctrines. Ms. Pitera also states that she is not invoking either the general discovery rule or the fraud-specific discovery rule (Dkt. No. 35 at 8), and she did not respond to ARG's arguments as to a continuing violation (*see generally id.*). Further, the Court notes that many of ARG's arguments rely heavily on its assertion that Ms. Pitera cannot establish an injury-in-fact (*see* Dkt. No. 29 at 15–18), which the Court has already rejected. *See supra* Section III.A.

factfinder could potentially rule in their favor. More importantly, though, many of ARG's arguments, although presented as lack of evidence, go to the sufficiency and ultimate admissibility of Ms. Pitera's evidence (including challenges to letters written by ARG's counsel), based mostly on attacks on Ms. Pitera's and other witnesses' credibility. Dkt. No. 29 at 18–21. Because it would be inappropriate for the Court to make credibility determinations at this stage, the Court FINDS that the Parties have raised sufficient disputes of material fact as to liability under the statutes to preclude summary judgment.

## IV. CONCLUSION

Accordingly, the Court DENIES the Parties' cross motions for summary judgment (Dkt. Nos. 27, 29).

Dated this 15th day of February 2024.

Tana Lin
United States District Judge